BROWNING et al. v. FUNKE.

(Circuit Court, S. D. New York. May 27, 1908.)

1. PATENTS—INFRINGEMENT—MAGAZINE FIREARM.
   The Browning patent, No. 580,925, for a magazine firearm, claim 14, if conceded invention and validity, *held* not infringed.

2. SAME—INVENTION.
   The Browning patent, No. 730,870, for a magazine firearm, claims 37, 38, and 39, are void for lack of invention.

In Equity. On final hearing.

Redding, Greeley & Austin (William A. Redding, of counsel), for complainants.

Grafton L. McGill (J. Nota McGill and Frederic D. McKenney, of counsel), for defendant.

HOLT, District Judge. This is a suit in equity to enjoin the alleged infringement of two letters patent—one No. 580,925, dated April 20, 1897, and the other No. 730,870, dated June 16, 1903—granted to John M. Browning, one of the complainants. Both patents relate to recoil-operated magazine firearms. The bill alleges infringement of claim 14 of patent No. 580,925, and of claims 37, 38, and 39 of patent No. 730,870.

Claim 14 of patent No. 580,925 is as follows:

"14. In a firearm, the combination of a sliding breech-bolt, a hammer cocked by the movement of the breech-bolt, a sear having a point to engage said hammer, a trigger to operate said sear, a latch freely movable to engage said sear-point and prevent its release from the hammer and to release said sear-point, and a spring acting upon said latch to hold it normally in engagement with the sear-point and yielding to permit its release."

This claim was originally claim 15, in the application originally filed, and then read as follows:

"15. In a fire-arm, the combination of a sliding breech-bolt, a hammer cocked by the movement of the breech-bolt, a sear having a point to engage said hammer, a trigger to operate said sear, and a latch to engage said sear point to prevent its release from the hammer."

This claim was rejected by the Patent Office on a reference to the patent to Borchardt, No. 571,260. The applicant thereupon amended the claim so as to read as it appears in the patent. The points introduced by the amendment, it will be perceived, consist in specifying the latch as being freely movable so as to engage said sear point, and the addition of the following element:

"A spring acting upon said latch to hold it normally in engagement with the sear-point and yielding to permit its release."

This claim relates to an arrangement for the purpose of locking the pistol, so that it cannot be fired without unlocking the pistol before the trigger is pulled. The latch has a projection which protrudes a little at the rear of and beyond the handle of the pistol. When the pistol is grasped in the hand for firing, the latch is moved in by the grip of the hand, and then by pulling the trigger the pistol is fired. Unless

the latch is moved in at the same time that the trigger is pulled, the pistol cannot be fired; the result being that the pistol cannot be accidentally discharged by dropping it, or by any ordinary accident.

I agree with the view of the Patent Office that the original claim as filed was anticipated by the patent to Borchardt. The only real difference between the safety device in the Borchardt patent and the safety device in the Browning patent consists in the fact that in the Borchardt patent the safety device is moved into a locking or unlocking position by a sliding latch situated on the side of and above the handle, in a position to be moved up and down by the thumb before or after firing. The practical difference between the two pistols, therefore, is that, in the Browning pistol, the unlocking of the safety latch is done automatically by the grip of the hand in the act of firing, and as soon as the hand is removed from the handle of the pistol the latch returns on a spring to its previous position; whereas, in the Borchardt pistol, there must be an intentional movement of the safety latch before firing in order to permit it to be fired, and after firing in order to lock the pistol again. Mr. Livermore, the complainants' expert, admits that:

"The substantial and important difference between the safety mechanism or device of the Borchardt pistol on the one hand, and the pistol of the Browning patent or defendant's pistol on the other hand, is that the Borchardt safety device is of the nonautomatic class."

It is obvious, and the evidence shows, that for certain uses there are great advantages in having the unlocking action automatic, so that the pistol, by the mere grip upon it in the act of firing, is made ready to fire. But claim 14 makes no claim of invention in or reference to the fact that the complainants' device acts automatically. Automatic devices of the kind are old. Various guns and pistols have arrangements for unlocking the gun by the grip of the hand in firing, as in the patents to Wesson, Dufour, Schluter, and others. In the Smith & Wesson patent, for instance, there is the same device for automatic action by the grip of the pistol that there is in the complainants' pistol, and all that would be necessary, in the Borchardt pistol, instead of having the safety device moved up and down by the thumb before or after firing, would be to have the safety device moved by the Smith & Wesson projection coming out at the rear of the handle. In my opinion, there is no invention involved in such a combination. If there had been, it was not claimed in claim 14.

The only addition to the claim made by its amendment consists in the statement that the latch was freely movable, and in the added element of a spring acting upon said latch to hold it normally in engagement with the sear point and yielding to permit its release. I see no point in the statement that the latch is freely movable. All the latches in such devices are. I think it doubtful whether the use of the spring amounts to invention. All such devices use springs. The only possible novelty in the Browning spring is that one spring acts at once upon the sear and the latch, instead of a separate spring acting upon each. But in any event, if the spring in the complainants' pistol is a novelty, the defendant does not use it, and does not infringe it.

Claims 37, 38, and 39 of patent No. 730,870 are as follows:

"37. In recoil-firearms having movable barrels, the combination of the rearward-moving barrel with linked levers, a stud or projection at the bending or 'knee' point of the linked levers and a curved guide-surface of the casing located in the path of the said projection, which in consequence of the recoil after firing is pressed against the said surface, substantially as shown and described.

"38. In a recoil-operated magazine-gun, the combination, with the receiver or casing, of a recoiling or sliding barrel, a breech-closing instrumentality, and two upwardly-breaking toggle-links connecting the said instrumentality with the recoiling or sliding barrel; the rear link of the two toggle-links being provided at a point forward of its rear pin with a surface for engagement with a surface upon the receiver or casing for lifting and unlocking the links during the rearward excursion of the recoiling or sliding barrel.

"39. In a recoil-operated magazine-gun, the combination, with the receiver or casing, of a recoiling or sliding barrel, a breech-closing instrumentality, and two upwardly-breaking toggle-links connecting the said instrumentality with the recoiling or sliding barrel; one of the said links being provided at a point forward of the rear pin of the rear link with a surface for engagement with the said surface upon the receiver or casing, for lifting and unlocking the links."

All the things referred to in these claims are admittedly old, except the particular point at which the force is applied for breaking the linked levers or toggle-joints. Recoil firearms are old. Such firearms having movable barrels are old. The combination of the rearward-moving barrel with linked levers or toggle-links is old. In the complainants' gun, the arrangement for breaking the toggle-links consists of a stud or projection at a point forward of the rear pin of the rear link, with a curved guide-surface for engagement with it upon the receiver or casing, for the purpose of lifting or unlocking the toggle-links. The use of toggle-links, for the purpose of opening the breech and enabling the shell of the exploded cartridge to be ejected and a new cartridge to be inserted in the gun for firing, is old. The Borchardt pistol shows the precise operation of the toggle-links in the complainants' gun, with the exception that, in the Borchardt pistol, the leverage for breaking the toggle-links is applied in the rear of the rear pin, instead of at a point forward of the rear pin. But the application of a breaking force at or near a point forward of the rear pin appears in various other designs for toggle-links, as, for instance, in the Smith & Wesson patent, the Von Skoda patent, and others. A great many methods of applying the leverage to break the toggle-links appear in the evidence, and in the state of the art at the time of the Browning application it involved no invention, in my opinion, to apply the force for the purpose of breaking the toggle-links at any particular point of them.

My conclusion is that there should be a decree in favor of the defendant, dismissing the bill on the merits, with costs.